### STATE OF GEORGIA
#### v.
**Charles LINDSEY; Curtis Brown; Eugene Jackson; Tyrone Reese; Gary Byron; Henry Lewis Brown.**

#### Crim. No. 26139.

United States District Court
N. D. Georgia,
Atlanta Division.

Nov. 10, 1969.

Marvin A. Miller, Asst. Dist. Atty., Jonesboro, Ga., for plaintiff.

Howard Moore, Jr., Peter E. Rindskopf, Atlanta, Ga., for defendants.

---

1. See Sulkowski v. Deutsch Dampfschifahrts Gesellschaft "Handa", 283 F.Supp. 503 (E.D.Pa.1968).

2. "See n. 1."

## ORDER

EDENFIELD, District Judge.

The sole issue before the court is whether the criminal prosecutions against defendants may be removed to this court, under 28 U.S.C. § 1443(1). Defendants Lindsey and Byron were charged with inciting to riot, with Lindsey's charge later reduced to interfering with an officer; Curtis Brown is charged with drunkenness and disturbing the peace; Jackson and Henry Lewis Brown are both charged with assault and battery, the former with intent to murder, the latter on an officer; and Reese is charged with drunken driving, weaving, improper tag, and improper inspection sticker. Defendants allege that their arrests occurred while attempting to peacefully use the facilities at Lake Spivey, Clayton County, Georgia, a place of public accommodation within Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a. They state that their arrests and threatened prosecutions are reasonably calculated and intended to "threaten, coerce or punish petitioners and others of petitioners' race and color from exercising rights, privileges, or immunities secured by Title II of the Civil Rights Act of 1964."

Under 28 U.S.C. § 1443(1):

"Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

"(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof; * * *."

■ ■ Georgia v. Rachel, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966), sets out two requirements for removal of state criminal prosecutions to federal court. See Georgia v. Birdsong, No. 26143, N.D.Ga., Oct. 17, 1969.

First, the right relied upon must be a "right under any law providing for the equal civil rights of citizens." Civil rights, regardless of their importance, cannot serve as a basis for removal unless they entail equal civil rights of a racial nature. See Shuttlesworth v. City of Birmingham, 399 F.2d 529 (5th Cir. 1968). Second, defendants must demonstrate that they are "denied or cannot enforce" in the state courts the equal civil right relied upon.

■ Here the equal civil right relied upon by each of the defendants is the exercise of the right to peacefully use public accommodations. It is abundantly clear that *if* this was a right exercised in point of fact, the initial requirement in *Rachel* will have been satisfied. Indeed, *Rachel* itself dealt with public accommodations. Moreover, it is obvious that under § 203(c) of the Civil Rights Act of 1964, 42 U.S.C. § 2000a–2, there can be no conviction or attempt to punish defendants for the exercise of the right to use a public accommodation. Hamm v. City of Rock Hill, 379 U.S. 306, 85 S.Ct. 384, 17 L.Ed.2d 300 (1964). *Contrast* Greenwood v. Peacock, 384 U.S. 808, 826–827, n. 25, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966), where no federal law was found conferring immunity from state prosecution for the conduct involved.

It is less than clear on a cold record that a prediction can be made that defendants will be "denied" or unable to enforce in the state courts the right to utilize the facilities of public accommodations, under § 2000a(a). Prior to *Rachel*, the Supreme Court had indicated in Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1880), and Com. of Virginia v. Rives, 100 U.S. 313, 25 L.Ed. 667 (1880), that the necessary prediction upon which removal could be predicated occurred only where the denial of equal civil rights was manifest in a formal expression of state law. As the Court put it:

"This requirement served two ends. It ensured that removal would be

available only in cases where the predicted denial appeared with relative clarity prior to trial. It also ensured that the task of prediction would not involve a detailed analysis by a federal judge of the likely disposition of particular federal claims by particular state courts." *Rachel*, supra, 384 U.S. at 803, 86 S.Ct. at 1796.

*Rachel* recognized that removal could be justified even, as in the instant case, in the absence of a discriminatory state statute, "if an equivalent basis could be shown for an equally firm prediction that the defendant would be 'denied or cannot enforce' the specified federal rights in the state court." *Ibid*, at 804, 86 S.Ct. at 1797. In *Rachel*, the prediction could be made since the criminal trespass charges brought against defendants involved the very exercise of the rights granted under § 201 of the 1964 Civil Rights Act and guaranteed against the threat of punishment under § 203 (c) of the Act. *Contrast* Naimaster v. NAACP, 296 F.Supp. 1277 (D.Md.1969).

■ In order to determine whether removal is proper in the instant action under *Rachel*, or improper, under Greenwood v. Peacock, supra, a hearing must be held. A flurry of removal cases following *Rachel* set the boundaries within which defendants must demonstrate at the hearing they come, to secure removal in the instant action.

In Ratcliff v. State of Texas, 296 F. Supp. 370 (S.D.Tex.1969), the party seeking removal was arrested for unlawful possession of a pistol. Removal was not allowed since no civil rights statute existed which prohibited prosecution of conduct "coterminous with conduct made the basis of the arrest." 296 F.Supp. at 372. Unlike the facts alleged in the removal petition there, which were not sufficient to even merit a hearing, in the instant action it is alleged that the arrests were caused by the exercise of protected civil rights activity. The allegations are not deficient on their face as in *Ratcliff*.

Orange v. State of Alabama, 386 F.2d 829 (5th Cir. 1967), involved a striking example of the distinction between arrest for the exercise of equal civil rights and arrest on other grounds, though allegedly racially motivated. One defendant was remanded to state court since his arrest was on a charge of contributing to the delinquency of a minor and there was no allegation that he attempted to exercise his rights under Title II of the Civil Rights Act. Nor was removal allowed as to those arrested for marching in the vicinity of the county jail to protest the arrest of others for seeking nondiscriminatory restaurant service, since marches are not protected by §§ 201, 202 of the 1964 Civil Rights Act. However, removal was permitted as to other complainants who were arrested for trespass while seeking service in public accommodations. The different treatment accorded to the complainants underscored a basic proposition propounded by the Supreme Court in Greenwood v. Peacock, supra, 384 U.S. at 827–828, 86 S.Ct. at 1812:

> "It is *not* enough to support removal under § 1443(1) to allege or show that the defendant's federal equal civil rights have been illegally and corruptly denied by state administrative officials in advance of trial, that the charges against the defendant are false, or that the defendant is unable to obtain a fair trial in a particular state court. * * * Under § 1443 (1), the vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court."

Wyche v. State of Louisiana, 394 F. 2d 927 (5th Cir. 1967), dispelled any notions that the *Rachel* rationale was limited to trespass charges under Title

II of the Civil Rights Act. As Judge Tuttle said for the Court:

"It is what the movant was actually doing with respect to the exercise of his federally protected rights, as determined in a hearing for remand, not the appellation which is attributed to his attempted exercise of the rights by a state prosecutor that controls." 394 F.2d at 929.

Thus, as Judge Sobeloff put it in a widely quoted concurrence in State of North Carolina v. Hawkins, 365 F.2d 559, 563 (4th Cir. 1966), cert. denied, 385 U.S. 949, 87 S.Ct. 322, 17 L.Ed.2d 227. "The test of removability is the content of the petition, not the characterization given the conduct in question by the prosecutor." In *Wyche*, removal was allowed from state charges of aggravated burglary, which consists of unauthorized entry with intent of committing a felony and actual commission of a battery. However, Wyche claimed that his entry into the establishment in question was authorized by § 201 of the Civil Rights Act and that he committed no acts while there. The court allowed removal on the theory that one of the grounds of the state charge was unauthorized entry and therefore he was being prosecuted for protected activity under §§ 201, 203(c).

Achtenberg v. State of Mississippi, 393 F.2d 468 (5th Cir. 1968), involved vagrancy arrests against several persons associated with the COFO Mississippi Summer Project for Negro Children. Four of the petitioners were arrested together for bringing Negro children into a public library, a place of public accommodation. A fifth petitioner, Sandra Adickes, was arrested at a different time, but also for alleged vagrancy. She, unlike the others, was not arrested while using the library. After peacefully complying with an order to leave the public library she went into a store to purchase food, where she was refused service, and arrested after leaving the store. The majority of the Fifth Circuit held that as to all of the complainants "the conduct which *caused* the arrest of these five persons under the vagrancy statutes * * * was conduct which was clearly protected under the provisions of Section 201 of the Civil Rights Act of 1964." (Emphasis added.) Judge Godbold, concurring in part and dissenting in part, agreed with the majority except as to Miss Adickes, whose case he felt was governed by *Peacock*, rather than *Rachel*. He felt that her conduct was broader than simply enjoyment of the library and of the public accommodations at a store, and that removal was impermissible even if the charges were baseless and made to punish the exercise of protected rights, since "Charges are removable [only] if quantitatively and qualitatively they involve conduct coterminous with activity protected under the Civil Rights Act, i. e., 'substitution of right for crime.'" 393 F.2d at 477. Judge Godbold criticized the majority for moving from the "substitution of right for crime" or "scope of conduct" test to the broader "causal relation" or "trigger" analysis.

Davis v. State of Alabama, 399 F.2d 527 (5th Cir. 1968), presented a case in which removal was allowed on state perjury charges, which 26 appellants contended derived from their engagement in voting activities protected under 42 U.S.C. §§ 1971, 1971i(b). As the Court stated, "they explicitly allege that they were engaged in the process of registering [to vote] at the time of the occurrence which became the basis of the alleged perjury charges." 399 F.2d at 528. In *Davis*, however, it is unclear if the protected conduct was an element in the actual charge and if a right was substituted for the alleged crime. Thus, both *Davis* and *Achtenberg* might extend, to some extent, the *Rachel* doctrine, as noted by Judge Godbold's partial dissent in *Achtenberg*. Language in Whatley v. City of Vidalia, 399 F.2d 521, 526 (5th Cir. 1968), underscores this possible extension. As the Court put it:

"* * * Congress has prohibited not only the conviction of a person for carrying on these activities, but in the case of public accommodations,

has expressly prohibited any person from *punishing* or *attempting* to *punish* any person for exercising these rights * * *. The Supreme Court has not held that these words do not comprehend spurious prosecutions for protected rights."

At the hearing herein required, counsel for both parties should be prepared to discuss the instant action in the light of the cases mentioned above.